Thanks for your argument. United States v. Taylor. Mr. Byrd. Your Honors, Counsels, good morning. My name is Mark Byrd and I represent the appellant Terry Taylor in this morning's hearing. Mr. Taylor, following a Johnson remand, was resentenced last December and received a sentence of 176 months in the Federal Bureau of Prisons. His amended guideline range, however, fell at 70 to 87 months. And it's our position that this sentence of more than double the high end of the recommended guideline advisory range, constituted a violation of the parsimony provision of Section 3553A and was therefore unreasonable. But isn't he being released in December? That's his scheduled time, barring any bad conduct that would cost him good time credit, he is scheduled for release in December. He's currently being housed in a community reentry program in Janesville, Wisconsin that he's been in since roughly April. Your Honors, it's our position that the district court relied on essentially two areas in trying to justify the extent of the upward departure in this case. The court's prior case law addressing this issue essentially boils down to what the court has described as a searching inquiry to determine if there are sufficiently compelling justifications to support the magnitude of the upward departure, which again in this case was more than double the recommended high end. And it was also contrary to the recommendation of the United States Probation Department, the defendant of course, as well as the Assistant United States Attorneys assigned to the case, all of whom recommended a sentence of essentially time served and release last December. The first justification that the district court offered to support this is the defendant's prior criminal record and criminal history. In this case, the defendant had amassed a total of 43 criminal history points, excluding certain offenses that had actually aged out based on the fact that they occurred in the early 1980s. But of those 43 criminal history points, I'm sorry? He was very busy you might say. He was, Judge, and we certainly can't run from that. However, if you compare that to the fact that this defendant had virtually almost 12 years in the Bureau of Prisons with virtually flawless conduct. He likes it there. I'm sorry? He likes it there. He enjoys it. Well, he certainly thrived there, Judge, in terms of what we're looking for in reformation and rehabilitation, and that is the ability to follow the rules and the norms. And in this case, if you examine the material from the Bureau of Prisons, the progress report, it shows that he was in no less than five different facilities. These facilities are oftentimes very authoritative. You're dealing with inmates, some of whom want you to fail, some of whom try to push your buttons. And to come through those 12 years in five different institutions with a virtually flawless record of conduct, except for two minor things that occurred, a gambling, I think in 2007, and a failure to follow an order in 2005. In the very beginning... It's only when he gets out to the expat. I'm sorry, Judge? It's only when he gets out of jail that he acts bad. Well, we don't quite know yet how the Bureau of Prisons has trained him, for lack of a better term. He's been in there for over 12 years now. He had never been to the Federal Bureau of Prisons prior to that. And while there may certainly be more opportunities to avail yourself of, and he did avail himself of those opportunities in terms of the classes and coursework he did... I'm not making light of your position. I sympathize with it so much. I understand. And we have to look at the prior criminal history, but in looking at that criminal history and deciding how it weighs against the 12 years of good conduct, you have to also take note of the fact that 29 of those 43 criminal history points were for traffic and misdemeanor offenses. He was a real bad boy back in the day, which tends to go along with the aging out type of idea that was articulated in the United States. That I really sympathize with. To the extent you can sympathize with a man with 43 criminal history points, I believe Mr. Taylor is a perfect candidate, Judge. Aside from those 29 criminal history points for misdemeanors and traffics, we have four of those criminal history points simply being status points for having committed offenses while under criminal justice sentences and within two years of being released from prior institution. But there's a market trend if you look at his criminal history. He starts out as a young man with violent offenses like aggravated battery, armed robbery. Then he progresses to the alcoholism and the DUIs and then the driving after revocations because he has no license and gets away from the violent offenses that he committed as a young man. Then you've got almost 12 years of good conduct. He's earned every day of good time credit that The district court and the government in trying to justify the criminal history as a basis for the upward departure of justification, the judge cited to Cross and Padilla. The government cited to Taylor, Jackson, Dawson, and Hallahan. And it's my position that each of those cases tends to beg the question because it tries to divert your honors from doing that searching inquiry to determine whether there's a compelling justification commensurate with the degree of departure and simply look at, well, did the judge dot his I's and cross his T's and relate everything back to 3553A? Are you asking for a remand or are you asking us simply to vacate his sentence? We're asking for his sentence to be vacated, Judge. A remand will simply delay the time that he's sitting serving time right now. What about that condition of supervised release that is questioned, that he mustn't violate any orders? Upon supervised release? I believe that was a condition, yes. Well, are you challenging that? No, not as a condition, Judge. I mean, I think that he should be required to conform his conduct to the law and I think that empirically looking at his spent of 12 years in the Bureau of Prisons, he is now rehabilitated to the point where he is likely to comply with that. District Court felt otherwise based on past history, but looking at what he has done most recently, we believe that... But that supervised release condition isn't limited to criminal activity. It says he has to obey every court order. Okay, that's true. Never seen that in a supervised release sentence. Well, certainly to violate an articulated court order would certainly suggest that you don't have the ability of reforming and rehabilitating your conduct to the rules that you're expected to follow, whether they be societal rules or court rules. So what do you do, send him back for another 100 months or something because he didn't obey some trivial order? Well, it would be a question of degree. I mean, certain orders that if they're violated constitute situations where the court doesn't take immediate retributive action and put the individual, for example, failing a drug test in light of a societal rule that you don't use drugs and a court rule that you don't test positive. A lot of times the court will take a chance on that defendant and order him to complete treatment. The second justification is Mr. Taylor's civil filings that were done out in Colorado where he's essentially suing people for conduct dating back to 1987. The district court held that that was a sufficiently compelling justification to justify the degree of departure and it's our position that it's simply not. For one thing, the judge believes that it's indicative of an intent to re-offend or harass or annoy based on conduct that happened in 1987, but empirically that's not the case. While the defendant was out of custody amassing those 43 criminal history points, if that were true you would expect at least one of them to be directed toward one of the defendants in those cases. Yet that's not the case. In addition to that, the ultimate idea of rehabilitation and reformation is I just want to finish this up and then I'll reserve the rest of the time, is that the pen is mightier than the sword and that you resolve your differences in a court of law the right way as opposed to the illegal way. This defendant picks up his pen, seeks legal recourse through the court system, however kooky his ideas might be about the liability and he's punished for that as a reason. It's our position that that was improper and that this sentence violates parsimony provision and was therefore unreasonable. We're asking that it be vacated. Thank you. Okay. Thank you Mr. Bird. Ms. Bucci? May it please the court, I'm Talia Bucci and I represent the United States in this appeal. The district court did not abuse its discretion in sentencing the defendant upon remand after granting of his Johnson version. What is this business of sentencing him because he files frivolous lawsuits? Well, your honor, the district court made very clear that he was not punishing the defendant for petitioning the courts. He said that at least three times on the record. What he was doing is looking to the substance of the defendant's allegations in some of those filings to see whether those allegations provided evidence of post-sentencing rehabilitation. If he files frivolous lawsuits or what have you, there are sanctions for that. Yes, your honor. You don't punish a person, you don't impose a sentence because you're afraid that he might file a frivolous suit, which of course is not criminal activity. You get it. And that, your honor, the district court made clear that that's not what he was doing. I don't think he made it clear at all. Why did he bring it up? He brought it up because the defendant raised the argument of post-sentence rehabilitation with his good conduct in prison. And the district court said, yes, I'm giving you credit for all of that, for the courses you've taken, for your good record. On the other hand, the allegations you have in these filings show that you continue to fixate on these events that happened before. There's false statements. Which I will not take into consideration except here it is. Well, I believe he was taking it into consideration for the limited purpose. You don't punish people criminally for filing frivolous lawsuits or making stupid comments. Well, the temptation may be strong. And, your honor, I don't believe that's what the district court was doing. Well, I think it is what he was doing. Why did he talk about all the frivolous lawsuits? What does that have to do with sentencing? He was looking at the allegations in those lawsuits. For example, the defendant continues to attack his underlying conviction, continues to claim... So what? Well, he continues to claim that Rockford... That is not criminal behavior to continue to attack your underlying conviction. But it does go towards whether the defendant has accepted responsibility for his actions. No, it doesn't. The district court believed that it did, and I would also... I've never seen this before. Sentencing a person because he files frivolous lawsuits or says things you don't like? What's that about? Well, one of the points here, your honor, was that the statements in those allegations... And where did you get this supervised release term about obeying orders? Where's that from? I've never seen that. Your honor, I believe that was imposed by the district court judge. That wasn't raised in any of the briefings and isn't something that needs to be decided here and now. Once the defendant is out on supervised release, he'll have plenty of time to challenge that condition. Out on supervised, plenty of time to challenge. What does that mean? Well, it wasn't raised in the briefing, so the parties haven't had a chance to fully brief that before, your honor. Are you going to defend that condition? I have never seen a condition like that. I think you're taking a very irresponsible position in this case. Your honor, I think it's important to note how limited the court's use of these filings, the allegations in those filings were. That was not the main driver behind this sentence. What's more important is you're required to defend your judge. Well, your honor, there's some truth in that. No, no, it's an absolute. But what we have here is we have a defendant who was involved in very serious misconduct. He not only possessed a firearm, but it was a sawed-off shotgun, and not only did he possess it, but he pointed it at another person, and there was evidence that he had fired it in and around his mother's home. He also has a very extensive criminal history, including at least seven prior felony convictions. Look, all that is true. The question is bringing up this business about his filing frivolous lawsuits and this condition never before seen about how he's to obey all orders of the – where'd you get these from? With respect to the filings part, your honor, I – I've been at this for a long time without ever seeing anything like this. I'm not aware – It was goofy behavior by you, the judge, and by you. I'm not aware if this condition has been imposed. Were you the trial lawyer? I was not, your honor. So you had nothing to do with what was going on downstairs? Not in this case, your honor. I know. Okay. Well, the government didn't ask for this condition. It did not. It was imposed by the district court judge, and it wasn't raised in the briefing, so we haven't had a chance to fully address it. Nor did the government ask for an upward variance. No, the government asked for a sentence of time served. However, the district court – The government didn't participate in this discussion. It just said time served would be sufficient, which would have gotten him out and solved all this problem. It would have gotten him out, but then I wouldn't have had the pleasure of being before you today. What was the reason the judge gave for not taking the recommendation of time served? Well, your honor, he looked into the criminal history. That was the primary driver, as well as the conduct here, the number of felonies the defendant had, the fact that although his criminal history showed him move away from violent conduct, the underlying conviction showed that he was returning to that violent conduct, and that his criminal history with 43 criminal history points showed an absolute disregard for the law. Does that mean 43 prior convictions? No, it means – I don't think in terms of points. I think in terms of convictions. I come from the state court system. How many priors does he have? He had, I believe, seven felonies, a couple of misdemeanors, and then several traffic offenses, and one of the issues that was raised was that many of these points were due to traffic offenses. The district court noted that, but also noted that some of these traffic offenses were actually very serious, had amounted to felony convictions, had also involved hit and runs. But given his age and given the fact that he's behaved himself for a long time in prison, does the judge think he's going to go out on some violent spree when he's released? Well, with respect to the aging out argument, the district court did address that, and stated that the defendant here at 45 years old had possessed and pointed a sawed-off shotgun at someone. So it doesn't show that he's aging out of that violent crime. The felonies were how long before his conviction for this offense? A few of them were – they started in the 1980s, continued through the 1990s, and then some of the traffic offenses, after he had repeated them several times, then were turned into felony convictions closer to his actual conduct in this case. Like recidivist OWIs? They were aggravated driving with a revoked or suspended license. Well, that's a felony by status rather than felony by conduct, which is less serious. So what's the most recent felony before this offense? Aside from the traffic ones? Aside from the traffic. He had an aggravated battery, I believe, in 1991. He also had a prior conviction. That's the most recent. Of the non-traffic felony convictions. 25 years ago. He also had possessed a sawed-off shotgun and had a state conviction for an offense on the state side for possession of a sawed-off shotgun before. So this is now the second time that he's done it. And, again, he's not just possessing that particularly dangerous weapon. He's also pointing it at someone, and he fired it. So those are proper considerations for the district court to have considered. Well, what were the factual surroundings of his discharge of the shotgun? Do we know? We know that there was a 911 call of shots fired at the defendant's house. We know that there were spent casings found around the house, other casings found in the defendant's pocket, and we know that a defendant's relative stated that the defendant had pointed the gun at him the night before. Okay, so it's a family feud of some sort. He didn't shoot anybody, did he? There was no reports of anyone being shot. Whether it's a family dispute or something else, I don't think the evidence. Or just being exuberant. It may be that. He's got a drinking problem. Unless the court has further questions, I will close by asking that the court affirm the defendant's sentence in this case. Okay, thank you, Ms. Boushey. Mr. Byrd, you have a minute or so. Thank you, Judge. I would just make two points. One, there's no indication that in that possession of a sawed-off shotgun, he ever fired at anybody out of anger or otherwise. Just shots were fired the night before. He may have pointed the gun at a relative. Shots weren't fired at that point. Nobody filed a complaint that they had been shot at or hit. Second point I would make is that on the issue of the civil filings, you have to wonder, looking at the sentence that Judge Reinhard gave Mr. Taylor, how strongly he believed his own argument about recidivism. Because, again, he was in a 151 to 188 range and was only given 176 months. He could have been sentenced to 20 years by doing 10 on count one, 10 on count two consecutive, and he would have been off the streets, not able to harass or annoy, and yet the judge sentenced him. Or file lawsuits. And file lawsuits. Though I don't think that the filing of the lawsuits was a problem. You can still file lawsuits when you're in jail, too. That's exactly what he did. The concern is it would translate into harassing behavior, and my point is while he was getting those 43 criminal history points, he was out and was in and out, but out certainly enough to where he could have retaliated or harassed or annoyed those people he was angry about from 1987 on. And that simply is not the case. For those reasons, we're asking that the court vacate the judgment of the district court and sentence and release Mr. Taylor as soon as possible. Okay, thank you very much. You were playing, weren't you? Yes. Thank you. Thank you.